UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FAYYAZ ALI DURRANI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. |
| v. ) | 24-11313-FDS |
| ) | |
| **RENA BITTER, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, C.J.**

Plaintiff Fayyaz Ali Durrani brought this action seeking injunctive relief and a writ of mandamus to compel the Secretary of State, the Assistant Secretary of the Bureau of Consular Affairs, and the Deputy Chief of Mission at the U.S. Embassy in Pakistan to complete the administrative review of plaintiff's visa application on behalf of his mother, Ameenah Durrani. The complaint alleges that the Department of State and the U.S. Embassy in Pakistan have unreasonably delayed their review of the visa application and that plaintiff was deprived of his right to due process of law under the Fifth Amendment of the U.S. Constitution.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the following reasons, that motion will be granted.

**I.   Background**

Unless otherwise noted, the following facts are set forth as alleged in the complaint.[1]

---

[1] On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2)

Fayyaz Ali Durrani is the son of Ameenah Durrani, who is a resident of Lahore, Pakistan. (Compl. ¶ 8). In March 2022, Durrani filed a Form I-130 visa petition on behalf of his mother with U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 2, 18). The following year, in March 2023, USCIS provisionally approved the petition, at which point it was forwarded to the National Visa Center ("NVC") for further processing. (*Id.* ¶ 21). In July 2023, the NVC notified Fayyaz Ali Durrani that the petition had been "Documentarily Qualified," meaning that the NVC had received all necessary documents concerning the petition and that a mandatory visa interview would be scheduled. (*Id.*). In the roughly 14 months since then, no interview has been scheduled, and the petition has remained with the NVC. (*Id.* ¶ 22).[2]

On May 17, 2024, Fayyaz Ali Durrani filed this action against the U.S. Secretary of State, the Assistant Secretary of the Bureau of Consular Affairs, and the Deputy Chief of Mission at the U.S. Embassy in Pakistan. The complaint asserts three causes of action. First, the complaint asserts a claim for unreasonable delay of agency action under the Administrative Procedure Act ("APA") (Count 1). Second, under the Mandamus and Venue Act ("MVA"), the complaint seeks a writ of mandamus from this Court to compel defendants to comply with their duties under the APA (Count 2). Third, the complaint asserts a claim for deprivation of due process of law under the Fifth Amendment of the U.S. Constitution (Count 3).

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

---

documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[2] The Court takes judicial notice of the status of the visa application on the U.S. Department of State website, according to the Immigrant Visa Case Number provided in the complaint. (Compl. ¶ 18); *Visa Status Check*, U.S. DEP'T OF STATE, https://ceac.state.gov/ceacstattracker/status.aspx (last accessed August 28, 2024).

## II. Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III. Analysis

### A. The APA Claim (Count 1)

#### 1. Jurisdiction

Although the APA does not itself provide an independent basis of subject matter jurisdiction, *see, e.g.*, *Conserv. Law Found. v. Busey*, 79 F.3d 1250, 1261 (1st Cir. 1996), the MVA does vest federal district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361. Despite their different requirements, the

APA and MVA are generally treated as coextensive for purposes of unreasonable-delay claims. *See, e.g.*, *Kinuthia v. Biden*, 2022 WL 17653503, at *4 n.7 (D. Mass. Nov. 9, 2022).

Section 1202(b) of the Immigration and Nationality Act ("INA") directs that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). However, other sections of the INA appear to grant near-total discretion to consular officers to grant or deny visa applications, *see* 8 U.S.C. §§ 1104(a) and 1201(a), leaving courts divided over whether the INA's provisions create a "nondiscretionary duty" that establishes jurisdiction under the APA and MVA. *Compare Kassem v. Blinken*, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) (holding that there is a mandatory duty under § 1202(b) and collecting cases) *with Mueller v. Blinken*, 2023 WL 4759245, at *3 (E.D. Va. July 17, 2023) (finding no mandatory duty under § 1202(b) and collecting cases).

This court has typically found a "nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." *Conley v. U.S. Dep't of State*, 2024 WL 1640074, at *3 (D. Mass. Apr. 16, 2024) (quoting *Pishdadiyan v. Clinton*, 2012 WL 664774, at *11 (D. Mass. Feb. 7, 2012)). Because neither party has offered a reason to depart from that principle, the Court will follow it here and exercise jurisdiction under the MVA to act on the APA claim.

### 2. Unreasonable Delay

To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a government agency "failed to take a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004), and (2) the agency's delay was unreasonable, *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023); *Conley*, 2024 WL 1640074, at *4.

As to the first element, the required action at issue is the agency's adjudication of plaintiff's mother's visa application. Defendants do not contest that the adjudication remains outstanding, and indeed accept that the required interview for final determination of the visa application has not yet been scheduled. Because the government agency has not yet taken the mandatory, discrete step of ruling on the visa application, plaintiff satisfies the first element of his APA claim.

The crux of the APA claim is the second element: whether the agency's delay is unreasonable. When evaluating whether an agency's actions are unreasonably delayed, courts apply the six-factor test laid out in *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). *See Towns of Wellesley, Concord & Norwood, Mass. v. F.E.R.C.*, 829 F.2d 275, 277 (1st Cir. 1987); *V.U.C. v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021); *Tang v. United States*, 2024 WL 1836624, at *1 (D. Mass. Apr. 26, 2024). Those factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citations and quotations omitted).

Plaintiff's opposition brief contends that any analysis of the *TRAC* factors is premature at this stage, given the "fact-intensive nature of the inquiry into whether a delay is unreasonable." (Pl.'s Opp. at 8). But the Court must nonetheless evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law. Indeed,

5

several courts have assessed a plaintiff's undue delay claim under the *TRAC* factors at the motion-to-dismiss stage.  *See, e.g.*, *V.U.C.*, 557 F. Supp. 3d at 220; *Tang*, 2024 WL 1836624, at *1; *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 141 (D.D.C. 2020); *Memon v. Blinken*, 2023 WL 1438396, at *1 (D.D.C. Feb. 1, 2023); *Fangfang v. Cissna*, 434 F. Supp. 3d 43, 48 (S.D.N.Y. 2020).

The Court will follow suit, and apply the *TRAC* factors here.  Although the Court understands plaintiff's frustration with the duration of his separation from his mother as the government adjudicates her visa application, the Court finds, in light of the *TRAC* factors, that the complaint does not plausibly allege that the delay is unreasonable.

### a.     First Factor

The first *TRAC* factor weighs in defendants' favor.  Whether the government has adhered to a rule of reason turns primarily on "whether the agency's response time . . . is governed by an identifiable rationale," *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014), accounting for the resources available to the agency, *Memon*, 2023 WL 1438396, at *3.  In the context of adjudicating visa applications, courts have consistently found that the government follows a "rule of reason" when petitions are processed, by and large, "in the order they were filed."  *Id.* at *2; *see also Tang*, 2024 WL 1836624, at *2; *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 166 (D.D.C. 2021); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021); *Muvvala v. Wolf*, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020).

The complaint does not allege sufficient facts to suggest that the government's visa process violates any "rule of reason."  Visa interviews are scheduled only after the NVC determines that a file is "Documentarily Qualified," subject to the local consular office's availability to conduct the interview.  (Defs.' Memo. in Supp. Mot. to Dismiss at 8).  With hundreds of thousands of applications awaiting interview scheduling worldwide, and "significant

backlogs" in the U.S. Embassy in Pakistan specifically, plaintiff is not in a unique position in experiencing delays of 14 months waiting for an interview. (*Id.* at 4-5). Such a wait time is undoubtedly distressing, but does not reflect a lack of rationality on the part of the government, given the current logjam and resource constraints. Plaintiff questions whether "there even is . . . a line" for visa processing and whether "[d]efendants have diligently worked on [p]laintiff's mother's visa application." (Pl.'s Opp. at 12, 14). But those are not factual allegations that provide a plausible basis for the contention that defendants' practice of scheduling interviews as availability arises is unreasonable. Thus, the first *TRAC* factor favors defendants.

        b.        <u>**Second Factor**</u>

The second *TRAC* factor likewise does not favor plaintiff. The statutory language cited by both plaintiff and defendant provides: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Plaintiff contends that under the case law, the statutory reference to a 180-day timetable "carries weight" in the evaluation of reasonableness, rendering the government's 14-month delay unreasonable. (Pl.'s Opp. at 12).

Courts have overwhelmingly interpreted Section 1571(b) as an aspirational "policy preference" rather than a "specific timeline" binding upon the agencies. *See, e.g.*, *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020); *Mohammad*, 548 F. Supp. 3d at 167; *Verma v. U.S. Citizenship and Immigr. Servs.*, 2020 WL 7495286, at *6 (D.D.C. 2020). "Several courts . . . have recognized that a sense of Congress resolution is not law." *Mohammad*, 548 F. Supp. 3d at 167. In fact, most courts have "rejected unreasonable delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b)." *Id.*; *see also Kangarloo*, 480 F. Supp. 3d at 141 (rejecting an unreasonable delay claim even though the visa applicant plaintiff waited nearly two years for

7

adjudication, because "that amount of time is in line with other decisions that have not found unreasonable delay"); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (stating that "the twenty-five-month delay at issue here is not unreasonable as a matter of law"); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (stating that a two-year delay "does not typically require judicial intervention"); *Fangfang Xu*, 434 F. Supp. 3d at 55 (finding that a three-year delay is "well within the range of time that other courts have found to not constitute unreasonable delay"); *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (stating that "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable").

The Court agrees that the statutory reference to a 180-day period is not a binding requirement that would render longer delays automatically unreasonable under the APA. Even if that timetable "carries some weight," *Verma*, 2020 WL 7495286, at *7, it is not a congressional mandate. The second *TRAC* factor does not therefore support a finding of an unreasonable delay.

      c.    <u>**Fourth Factor**</u>

The fourth factor of the *TRAC* analysis—"the effect of expediting delayed action on agency activities of a higher or competing priority"—weighs heavily in favor of defendants. *TRAC*, 750 F.2d at 80. The D.C. Circuit has consistently emphasized "the importance of competing priorities in assessing the reasonableness of an administrative delay," going so far as to refusing to grant relief to petitioners when all factors other than the fourth factor favored the petitioner. *Palakuru*, 521 F. Supp. 3d at 52 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). The fourth factor carries such weight because courts "have no basis for reordering agency priorities." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76

(D.C. Cir. 1991). As a result, when evaluating unreasonable delay claims, courts have consistently declined to move plaintiffs to "the head of the queue" because doing so would "simply move[] all others back one space and produce[] no net gain." *Norton*, 336 F.3d at 1100 (alterations in original).

The same considerations apply to the current case. Moving plaintiff's mother to the front of the line would simply move the several thousand other applicants "back one space," *id.*, including those applicants who lack the "wherewithal to retain private counsel and to bring suit in District Court," *Fangfang Xu*, 434 F. Supp. 3d at 55. And plaintiff does not allege sufficient facts suggesting that the government has treated him or his mother "differently than any of the other tens of thousands of applicants who have also waited" to schedule an interview. *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020). Given the significant backlog of similarly situated applicants awaiting interviews—and the one-step-back effect that granting plaintiff's petition would entail—the Court finds that the fourth factor strongly supports defendants' position.

### d. Third and Fifth Factors

The third and fifth *TRAC* factors are often evaluated together in order to assess "the interests prejudiced by delay," including the delay's effect on "human health and welfare." *Mohammad*, 548 F. Supp. 3d at 168 (quoting *TRAC*, 750 F.2d at 80). Despite the unquestioned difficulty that family separation may have on a plaintiff, "[i]n general, concerns about separation from family . . . are insufficient to weigh in favor of the plaintiff," *Memon*, 2023 WL 1438396, at *3, because there are "many others facing similar circumstances," *Palakuru*, 521 F. Supp. 3d at 53.

Here, the complaint alleges a number of "personal, emotional, and financial hardship[s]" stemming from the government's delay in processing the application. (Compl. ¶ 7). The Court

9

does not doubt the impact that the waiting period has had on plaintiff and his family. Again, however, plaintiff is not uniquely situated. It is true that plaintiff would benefit from an expedited review. But "so, too, would presumably . . . every petitioner currently awaiting a decision." *Tang*, 2024 WL 1836624, at *3. And, again, a court order placing plaintiff at the front of the line would merely move the thousands of other similarly situated applicants one step back. *See Norton*, 336 F.3d at 1100. The third and fifth factors, therefore, do not favor plaintiff.

          e.        **Sixth Factor**

Finally, the sixth *TRAC* factor does not support plaintiff's claim, as there are no allegations that defendants have acted illicitly or with impropriety. In fact, plaintiff's opposition brief expressly concedes that "there is no evidence that [d]efendants have engaged in any improper conduct." (Pl.'s Opp. at 12). As *TRAC* directs, "the lack of plausible allegations of impropriety does not weigh against [plaintiff]" and is therefore neutral in the Court's analysis. *Palakuru*, 521 F. Supp. 3d at 53.

          f.        **Conclusion**

In sum, based on the *TRAC* factors, the Court determines that plaintiff has not stated a claim for unreasonable delay under the APA, and thus grants defendants' motion to dismiss Count 1.

     **B.**        **The MVA Claim (Count 2)**

For the reasons discussed above, the Court also finds that Count 2 fails to state a claim upon which relief can be granted under the MVA. "Courts in this circuit and others . . . construe the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." *Pishdadiyan*, 2012 WL 664774, at *11. As a result, the Court "evaluate[s] (and

reject[s]) a claim for mandamus under the same analysis as the unreasonable-delay claim." *Palakuru*, 521 F. Supp. 3d at 54.  Count 2 will therefore be dismissed.

### C.     The Due-Process Claim (Count 3)

Finally, Count 3 alleges that defendant's delay "constitutes a deprivation of [p]laintiff's protected interest without due process" in violation of the Fifth Amendment of the Constitution. (Compl. ¶ 40).  The complaint is somewhat unclear about the specific liberty interest at issue.  It indicates that plaintiff has a statutory entitlement to adjudication of his mother's visa application, and that defendants' delay in adjudicating the application constitutes both a substantive and a procedural due-process violation.  (Compl. ¶ 38-40).  However, it also suggests that plaintiff's liberty interest lies in his right to be unified with his noncitizen mother, as their current separation has caused "personal, emotional, and financial" injuries to plaintiff.  (Compl. ¶ 7-10). Either way, the complaint fails to state a plausible due-process claim, and therefore Count 3 will be dismissed.

#### 1.     Substantive Due-Process Claim

First, the complaint fails to state a plausible substantive due-process claim.  "The substantive component of due process protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Souza v. Pina*, 53 F.3d 423, 425-26 (1st Cir. 1995) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  The test to determine if a government action violates a plaintiff's substantive due-process rights varies based on whether the challenged action is legislative or executive in nature.  *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005).  Where, as here, a plaintiff challenges an executive action, the complaint must allege that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8

11

(1998)).  The hallmark of successful conscious-shocking challenges is "an extreme lack of proportionality," *Gonzalez-Fuentes*, 607 F.3d at 881, in which the official conduct in question is "intended to injure in some way unjustifiable by any government interest," *J.R. v. Gloria*, 593 F.3d 73 (1st Cir. 2010) (quotations omitted).  Mere negligence alone will not suffice.  *Id.*

The government's delay here does not rise to the level of shocking the conscience.  Indeed, plaintiff's opposition brief explicitly disclaims any suggestion that defendants intentionally engaged in any improper conduct in processing the visa application.  (Pl.'s Opp. at 12).  Furthermore, the government's delay, intentional or otherwise, is not egregious, as the government has not simply permitted plaintiff's mother's visa application to sit idly for years on end.  Rather, over the past two years, the government has taken steps to move the application process along, with the USCIS approving the visa petition in March 2023 and the NVC notifying plaintiff of the application's "Documentarily Qualified" status in July 2023.  (Compl. ¶ 19, 21).  Although plaintiff's mother has yet to receive an interview appointment to complete the adjudication process, a wait time of roughly 14 months is not "so egregious" as to violate plaintiff's substantive due-process rights.

Finally, there is no violation of substantive due-process rights without deprivation of a protected interest in life, liberty, or property.  *See Aguilar v. U.S. Immigration & Customs Enf.*, 510 F.3d 1, 23 (1st Cir. 2007).  As the Supreme Court recently confirmed, United States citizens do not possess a protected interest in their reunion with noncitizen family members.  *See Dept' of State v. Muñoz*, 144 S.Ct. 1812, 1825 (2024).  Nor do individuals possess a protected interest in the issuance of an entitlement that may be granted or denied in the government's discretion, *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005), including the issuance of a visa to a noncitizen spouse, *see Raouf v. U.S. Dep't of State*, 702 F. Supp. 3d 19, 34-35 (D.N.H. 2023).  In

short, plaintiff has neither a liberty interest in reuniting with his mother nor a liberty interest in receiving an adjudication of his mother's visa application. The complaint therefore fails to state a substantive due-process claim.

### 2. Procedural Due-Process Claim

The complaint also fails to state a plausible procedural due-process claim. Individuals do not possess a procedural due-process right "in *someone else's* legal proceeding." *Muñoz*, 144 S.Ct. at 1825 (emphasis in original). Although plaintiff himself filed the Form I-130 as the U.S. citizen sponsor for the visa petition, his mother is the subject of the visa application requiring approval from the government. (Compl. ¶ 18-19). Even assuming that plaintiff has suffered harm from the government's delay in adjudicating the application, "that harm does not give [plaintiff] a constitutional right to participate in [his mother's] consular process." *Muñoz*, 144 S.Ct. at 1826. And because the complaint does not establish a constitutionally protected interest belonging to plaintiff himself—either in his reunion with his non-citizen mother or the adjudication of her visa application—the complaint does not state a plausible procedural due-process claim.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED. The clerk is instructed to enter a separate order of dismissal.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: September 18, 2024   Chief Judge, United States District Court